(C. D. 1676)

JOSEPH BEHR & SONS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 27, 1955)

*Philip Stein* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and OLIVER, Judges; EKWALL, J., concurring in part

JOHNSON, Judge: This case involves six protests, consolidated at the trial, covering three entries of tractor parts, drums, and other articles imported from the Philippine Islands in January and February 1950, entered as "Foreign Excess Property imported under Public Law 152, 81st Congress & in conformity with the provisions of Dept. of Commerce authorization dated 11/2/49. American Goods Returned." The items were assessed with duty at 15 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as machinery parts. It is claimed that the merchandise is entitled to free entry under paragraph 1615 of the said tariff act, as amended by the Customs Administrative Act of 1938, as American goods returned, or, if any portion is not exempt under paragraph 1615, as amended, that such portion is free of duty under paragraph 301 of said tariff act, by virtue of Public Law 869, 81st Congress (64 Stat. 1093), as metal scrap, imported for use in manufacturing by melting, or that said portion is dutiable at 37½ cents per ton under said paragraph 301, as modified.

The pertinent statutory provisions are as follows:

PAR. 372 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802].
Machines, finished or unfinished, not specially provided for:

    \*          \*          \*          \*          \*          \*          \*

Other \* \* \*_____15% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

    \*          \*          \*          \*          \*          \*          \*

Other_____ The same rate of duty as the articles of which they are parts.

PAR. 1615 [as amended by the Customs Administrative Act of 1938]. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means. [Free.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

Public Law 869 [64 Stat. 1093]. SEC. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

SEC. 2. Articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, imported to be used in remanufacture by melting, shall be accorded entry free of duty and import tax, upon submission of proof, under such regulations and within such time as the Secretary of the Treasury may prescribe, that they have been used in remanufacture by melting: *Provided, however,* That nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.

PAR. 301 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802].
Wrought and cast scrap iron, and scrap steel_____37½¢ per ton

This case was submitted upon a stipulation of fact entered into by counsel for the respective parties, certain documentary evidence and illustrative exhibits, and the testimony of George J. Berns, branch manager of a local branch of the plaintiff corporation. The stipulated facts, supported by the documentary evidence, may be summarized as follows: The merchandise was returned by the examiner as "1615/free or P. 372, 15%—unable to identify." According to a supplemental statement of the appraiser, dated April 7, 1954 (plaintiff's exhibit 3), the said examiner's return in the alternative, together with the words "unable to identify," were intended to express the opinion that the merchandise was of American origin but that the examiner was unable to verify the origin of the merchandise or the identity of the manufacturer. Had there been evidence of foreign manufacture, no alternative return would have been made.

The said supplemental memorandum states further that evidence submitted and reviewed by the appraiser's office indicates:

1) that the merchandise consists of tractor parts—not whole trucks with generators, manufactured by Allis Chalmers Manufacturing Company, International Harvester Company, and Caterpillar Tractor Company;

2) 60% of the merchandise is identifiable by names and/or numbers;

3) 20% of the merchandise, although not bearing the manufacturers' names or serial numbers, is identifiable as tractor parts. These particular parts are identifiable as manufactures of Allis-Chalmers Manufacturing Company, International Harvester Company, and/or Caterpillar Tractor Company by comparison with tractor parts bearing the manufacturers' names and/or numbers. These parts were compared upon segregation by experts and were subsequently sold by item numbers of the manufacturing concerns named above;

4) 17% of the merchandise is scrap;

5) 3% of the merchandise cannot be identified in any way.

Upon liquidation, duty was assessed on all the merchandise for the reason that no certificates of exportation had been filed by the importer prior to liquidation to establish the fact that the merchandise had been exported from the United States without payment of drawback. Subsequently, by telegram, dated February 24, 1953 (plaintiff's collective exhibit 2), it was ascertained from the drawback section of the Bureau of Customs that no drawback rates had been established for tractor parts manufactured by Allis-Chalmers Manufacturing Co., International Harvester Co., or Caterpillar Tractor Co. The parties conceded, therefore, that no drawback could have been paid upon the exportation of said merchandise.

According to the stipulation, certificates of exportation could not be obtained with respect to this merchandise, through no fault of the importer, because said merchandise was exported by or on behalf of the Armed Forces during World War II and no shippers' export declarations were required to be filed therefor. Consequently, it was impossible for the plaintiff to comply with section 10.1, Customs Regulations of 1943, as amended, by filing certificates of exportation. The collector, now being satisfied from the supplemental statement of the appraiser and the other documents submitted by the plaintiff that the tractor parts covered by these entries were of domestic origin and that no drawback could have been paid upon the exportation thereof, would now waive the production of said certificates of exportation, as permitted by section 10.2 of said regulations, were the entries before him for review.

It was further stipulated:

(1) That 60% of the merchandise covered by the invoices and entries the subject of these suits consists of tractor parts identifiable by names and/or numbers as tractor parts manufactured by Allis-Chalmers Manufacturing Company, International Harvester Co., and/or Caterpillar Tractor Co., exported from the United States without the payment of drawback and returned to the United States without having been advanced in value or improved in condition, of the same class or kind of merchandise as that the subject of Abstract 47521 and Abstract 57731, wherein said merchandise was held to be free of duty under Paragraph 1615 of the Tariff Act of 1930, as amended.

(2) That 17% of the merchandise covered by the invoices and entries the subject of these suits, consisted of scrap metal other than ores or concentrates or crude metal, including old oil drums from which the tops had been cut, beyond

any use for the purpose for which manufactured, and other second hand, waste, or refuse scrap metal in a battered and broken condition, not suited for the purposes for which originally made and in a condition unfit for any use other than for remanufacture by melting, similar to the class or kind of merchandise the subject of Abstract 56175, wherein such merchandise was classified by the Collector of Customs under Paragraph 301 of the Tariff Act of 1930 as modified by T. D. 51802 at 37½¢ per ton; and that as to 224.646 tons thereof, with respect to which affidavits establishing that said quantity of metal scrap was used in remanufacture by melting, have been submitted to the Collector of Customs and are now included in the official papers herein, said merchandise is of the same class or kind as the merchandise the subject of Abstract 56220, Abstract 56175, and Abstract 57455, wherein such merchandise was held to be exempt from duty under Paragraph 301 of the Tariff Act of 1930 as modified by T. D. 51802, by reason of Public Law 869, 81st Congress.

The plaintiff abandoned all claims as to the 3 per centum of the merchandise which the appraiser's supplemental statement indicated could not be identified, but reserved the right to introduce further evidence in open court in support of its claims as to the 20 per centum of the merchandise referred to in subparagraph 3 of the appraiser's supplemental statement, quoted above.

At the trial, George J. Berns, heretofore mentioned, testified that he had had charge of the unloading of the within merchandise upon its arrival from the Philippines and had supervised the details of sorting, identifying, and preparing the articles for sale. He said that, in the course of his work for the plaintiff, he had become familiar with tractor parts so as to be able to identify them; that the major portion of the tractor parts covered by the entries herein bore names or numbers, and that those which did not were identified by comparison with the items which were marked.

The witness produced in court tractor parts which had numbers, and parts which did not. He explained that, normally, tractor parts bear names or numbers and that each manufacturer uses a different system of letters and numbers to identify its parts. Two of the articles produced were unmarked gears, but one was contained in a box of the Caterpillar Tractor Co., bearing the word "gear" and a number (plaintiff's collective illustrative exhibit 6). The witness stated that the two gears were identical, and both were parts of the original shipment. He also produced a plate which had a number stenciled on it, and one which did not (plaintiff's collective illustrative exhibit 7). He pointed out that where parts are numbered by stenciling, the stencil sometimes wears off. By comparison, he identified the unmarked plate as a Caterpillar tractor part. There were also introduced into evidence two unmarked screw assemblies, one loose, and one contained in a paper bag, bearing a tag of the Allis-Chalmers Mfg. Co. (plaintiff's collective illustrative exhibit 8). The witness identified the former as a product of the Allis-Chalmers Manufacturing Co. by comparison with the latter.

The witness testified that the tractor parts covered by these entries were sold, where identifiable, for their original intended purposes, in most cases by part number, to dealers from the individual companies or to local dealers. While some parts were returned because they were defective, none was unaccepted because it was not the part for which it was sold. The witness added that the parts which were not identifiable were accumulated and sold as scrap.

According to the witness, there were other items in addition to the three parts produced at the trial included among the 20 per centum of the merchandise identified by comparison. He said that the total shipment involved thousands of tractor parts and, in his opinion, they were of American manufacture.

From this testimony and from an examination of the illustrative exhibits, it appears that the unmarked tractor parts involved herein could be identified by comparison with marked tractor parts. The record also establishes that the 20 per centum of the merchandise which was not marked was identifiable as manufactures of three American firms; that such items were compared and identified by experts; that they were sold as identified; and that none was returned because it was not the part for which it was sold. We conclude that said merchandise was of the same type as the 60 per centum which counsel have agreed consisted of "tractor parts manufactured by Allis-Chalmers Manufacturing Company, International Harvester Co., and/or Caterpillar Tractor Co., exported from the United States without the payment of drawback and returned to the United States without having been advanced in value or improved in condition."

On the record presented, we find that plaintiff has established that 80 per centum of the merchandise was of initial American manufacture; that it was not advanced in value or improved in condition while abroad; and that the regulations have been complied with, or it was agreed that compliance would now be waived by the collector, were the matter still before him. Said portion of the merchandise is, therefore, entitled to free entry under paragraph 1615 of the Tariff Act of 1930, as amended, as American goods returned. *Traders Service Corporation* v. *United States*, 9 Cust. Ct. 407, Abstract 47521; *Transcontinental & Western Air, Inc.* v. *United States*, 24 Cust. Ct. 325, Abstract 53865; *Barnett International Forwarders, Inc.* v. *United States*, 30 Cust. Ct. 368, Abstract 57121; *Dulien Steel Products, Inc., of Calif. and W. J. Byrnes & Co., Inc.* v. *United States*, 32 Cust. Ct. 362, Abstract 57731.

In view of the stipulation and on the documentary evidence presented, we hold further that an additional 17 per centum of the merchandise is entitled to free entry under Public Law 869 (64 Stat. 1093), as metal scrap, fit only to be remanufactured, or as articles of which metal is the component material of chief value, imported to be

used in remanufacture by melting. *H. Klaff & Co., Inc.* v. *United States*, 28 Cust. Ct. 345, Abstract 56175; *Harry Harris & Co.* v. *United States*, 29 Cust. Ct. 331, C. D. 1488; *Fabrikant Steel Products, Inc.* v. *United States*, 31 Cust. Ct. 237, Abstract 57457; *National Lead Co.* v. *United States*, 32 Cust. Ct. 511, Abstract 58127.

To that extent, the protests are sustained. As to all other items and in all other respects, the protests, having been abandoned, are overruled. Judgment will be rendered accordingly.

CONCURRING IN PART

EKWALL, Judge: I concur in the holding of the majority that the protests should be sustained in part, but, to my mind, the evidence is insufficient to enable the court to render a judgment order upon which the collector could reliquidate the various entries. Therefore, it seems to this member of the court that the evidence should be clarified as to the percentages "of the merchandise." Whether these percentages are based upon weight or value does not appear. It is noted that the appraiser's report in evidence (exhibit 3) states that the percentages given by him, viz, 60 per centum, 20 per centum, 17 per centum, and 3 per centum are given in lieu of weights, for the reason that the merchandise was not weighed at the time of examination.

Entry was made in each case at a unit value of $45 per long ton, as invoiced. This value was accepted by the appraiser, as shown by the check marks on the summary sheets in evidence. The collector assessed duty in each case upon the basis of an ad valorem rate, i. e., 15 per centum under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), based upon the appraised values. In order that this court may render a certain and definite judgment order, it seems to me that the case should be restored to the docket in order that the record may be clarified as to the basis for the percentages which the majority opinion finds entitled to entry free of duty.